IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2010

**STATE OF TENNESSEE v. KEVIN ALLEN GENTRY**

**Direct Appeal from the Circuit Court for Sevier County**
**No. CR11894      Richard R. Vance, Judge**

_____

**No. E2009-02041-CCA-R3-CD - Filed July 21, 2011**

_____

A Sevier County Circuit Court Jury convicted the appellant, Kevin Allen Gentry, of twelve counts of especially aggravated sexual exploitation of a minor and ten counts of sexual exploitation of a minor. The trial court imposed a total effective sentence of thirty-eight years in the Tennessee Department of Correction. On appeal, the appellant argues that the charges should be dismissed because the State "held back" the indictment in the instant case in violation of Rule 8(a) of the Tennessee Rules of Criminal Procedure, that the trial court erred in denying his motion to suppress because of an invalid search warrant, that the evidence is insufficient to sustain his convictions, and that the trial court erred in sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Amber D. Haas, Sevierville, Tennessee, for the appellant, Kevin Allen Gentry.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General; and Jeremy D. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On December 18, 2006, the appellant was charged by presentment with twenty-three counts of especially aggravated sexual exploitation of a minor. The counts involved victims

A.H., B.H., and L.H., all of whom were minor females unrelated to the appellant.[1]  Prior to trial, the State dismissed count ten and proceeded to try the appellant on the remaining twenty-two counts.

The State's first witness at trial, Sevier County Sheriff's Detective Matthew Cubberly, testified that in the early morning hours of May 14, 2004, he executed a search warrant at the appellant's residence.  When Detective Cubberly arrived, the appellant, A.H., and an adult female were present at the residence.  Pursuant to the search warrant, Detective Cubberly confiscated several items from the appellant's bedroom, including the appellant's computer, floppy disks, hard drive disks, CDs, DVDs, VHS tapes, film, notes, a printer, a digital camera, and the appellant's passport.  Detective Cubberly stated that he took the confiscated items to Investigator Melvin Pierce of the Internet Crimes Against Children Unit (ICACU) at the Knoxville Police Department for forensic testing.  Detective Cubberly said Investigator Pierce found images of minor females in sexual situations on a CD which had been "stacked around the computer."

Later that day, Detective Cubberly took a statement from the appellant at the sheriff's department.  The appellant told Detective Cubberly that "nude photographs and videos of [A.H.] and [B.H.]" were on the computer.  The appellant advised Detective Cubberly that he also had photographs of the appellant and the victims engaged in sexual activity.  Detective Cubberly said the appellant was calm when he gave the statement and that he did not seem upset.

Investigator Pierce testified that he analyzed the computer, CDs, and floppy disks confiscated from the appellant's residence.  From one of the confiscated CDs, Investigator Pierce retrieved twenty-two images of minors engaged in sexual acts or posed in a sexually provocative manner.  Investigator Pierce explained that each photograph had a "file created date.  That is specific to when the image was created and stored on the computer that copied it to the disk, not [when it was] copied to the disk."

Investigator Pierce made paper copies of the twenty-two images, placing each on a separate page.  Image number one was a photograph of the appellant.  Investigator Pierce said that image number two depicted a minor female "on all fours," being penetrated from behind by the appellant while she performed cunnilingus on another minor female.  Investigator Pierce said that image number three depicted the same scene except "a sexual device" was being used.  Image number four depicted the victims in the same poses while the appellant looked at the camera.  Image number five depicted a similar scene but the appellant was not looking at the camera.  Image number six depicted a similar scenario, but

---

[1]  It is the policy of this court to refer to minor victims of sexual offenses by their initials.

the appellant was grasping the shoulder and waist of the minor he was penetrating.

Image number seven depicted the appellant engaged in vaginal intercourse with a female who appeared to be a minor. Image number eight showed a minor female exposing her vagina. In image number nine, the minor female was exposing her vagina and her anus. Image numbers two through nine had a file created date of June 25, 2003.

Image number ten depicted a minor female lying on a mattress, exposing her vagina. Image number twelve depicted a minor female exposing her breasts. Image numbers ten and twelve had file created dates of June 20, 2002.

Image number thirteen depicted two minor females, one of whom was exposing her vagina. Image number fourteen depicted three females, two of whom appeared to be minors, exposing their buttocks and genitals. Image numbers thirteen and fourteen had a file created date of June 28, 2002.

Image number fifteen depicted a minor female pulling up her shirt and exposing her breasts. Image number sixteen depicted a minor female exposing her vagina. Image numbers fifteen and sixteen had a file created date of June 25, 2002. Image number seventeen showed a minor female exposing her breasts and vagina. This image had a file created date of June 29, 2002.

Image number eighteen showed a minor female "doing . . . a back bend with her breasts exposed." Image number twenty showed a minor female exposing her breasts. Image number twenty-one depicted a minor female exposing her vagina. Image numbers eighteen through twenty-one had a file created date of June 25, 2002.

Image number twenty-two showed the appellant looking directly into the camera while a minor female fellated him. Image number twenty-three also depicted the minor female performing fellatio on the appellant. Finally, image number twenty-four depicted the appellant performing cunnilingus on the minor female. The file created date on the final three images was March 2, 2003.

Investigator Pierce said that a picture of the appellant's driver's license and social security card was retrieved from the confiscated computer's hard drive. Additionally, from either "the floppy disk, CDs or the computer," Investigator Pierce retrieved two photographs of the three minor females, fully clothed.

A.H. testified that her date of birth was June 5, 1989, and that on June 25, 2003, she was fourteen years old. She said that she met the appellant when she was nine years old and

that she started going to the appellant's residence when she was eleven years old. When she began visiting, the appellant had an adult, live-in, girlfriend named Chanelle Rice. Two other adults, a woman named Vickie and a man named Michael McGarvey, also lived at the house. A.H. said that she moved into the appellant's residence because her mother took drugs, and A.H. believed the appellant's residence was a better environment for her.

A.H. said that her sister, L.H., was born on November 6, 1987, and that L.H. and the appellant developed a sexual relationship. Thereafter, in 2002 or 2003, A.H. began a consensual sexual relationship with the thirty- or thirty-one-year-old appellant.

After A.H. began living at the appellant's home, B.H., a friend from school, came to the home to "hang out." B.H. also had a sexual relationship with the appellant, and the three of them engaged in sexual acts together. A.H. said that she eventually became jealous of B.H. and did not want her to visit. A.H. said that the appellant would insist that she bring B.H. to his home and that he would go get B.H. A.H. said that she could not leave the appellant's home because she had nowhere else to go. A.H. stated that the appellant knew her age and the ages of L.H. and B.H.

A.H. identified the photographs of the appellant and the three minors. She stated that the scenes were not "staged" and that the photographs depicted "actual sexual activity." She said that Chanelle Rice and Vickie took the photographs but that the appellant was involved in "positioning or things like that." She acknowledged that she knew the photographs were being taken.

A.H. said that image numbers two through six were of her, B.H., and the appellant. Image number seven depicted the appellant and B.H. A.H. said she was depicted in image numbers eight, nine, twelve, thirteen, fifteen, twenty, and twenty-one. Image number ten depicted B.H. A.H. said her sister, L.H., was depicted in image numbers sixteen through nineteen. She said that image number fourteen depicted A.H., L.H., and Chanelle Rice. Finally, she stated that image numbers twenty-two through twenty-four depicted A.H. and the appellant. A.H. stated that she had never seen anyone but the appellant use the computer in his bedroom.

B.H. testified that her date of birth was November 21, 1988. In 2003, when she was fourteen years old, she began spending time with A.H. and the appellant at his residence. She stated that she engaged in consensual sexual acts with the appellant and with the appellant and A.H. She stated that occasionally the sexual acts were photographed. She said that the appellant did not ask her to pose for the photographs and that she knew the photographs were being taken. B.H. maintained that some of the photographs were taken by Vickie and that one photograph may have been taken by A.H. After viewing the photographs admitted at

-4-

trial, B.H. acknowledged that she was depicted in image numbers two through seven and number ten. B.H. said both she and A.H. had used the appellant's computer, but the appellant's roommates had not used it.

The appellant chose not to put on any proof at trial.

Based upon the foregoing, the jury found the appellant guilty of especially aggravated sexual exploitation of a minor as alleged in counts one through nine. Additionally, the jury found the appellant guilty of especially aggravated sexual exploitation of a minor as alleged in counts twenty-one through twenty-three. Finally, the jury found the appellant guilty of sexual exploitation of a minor as alleged in counts eleven through twenty.

At sentencing, Detective Cubberly testified that he had investigated a previous rape of a child case involving the appellant. Detective Cubberly stated that the appellant failed to appear in court on that charge because he "faked a suicide." The appellant was later apprehended in South Carolina.

Brent Horst, the attorney who represented the appellant on the rape of a child case, testified that he became aware of the photographs in the instant case "a little while after" the appellant was indicted for rape of a child. He stated that A.H., a victim in the instant case, was a witness in the rape case.

The appellant testified that he was not guilty of the instant charges. He admitted he was in some of the photographs; however, he denied that he took any of the photographs or that he knew the photographs were in his home. The appellant stated that he did not ask the victims to take the photographs and that he specifically told his roommate not to take the photographs. The appellant said "[t]here was only one picture where I was facing said camera . . . [and] it seems that any picture that was taken after that was taken from a different angle in the house like she had hid somewhere else in the house and took them." On cross-examination, the State asked the appellant, "What did you do to ensure that [the roommate] had not taken a picture?" The appellant responded, "Well, I didn't do anything at the time. I was a bit busy."

At the conclusion of the sentencing hearing, the trial court observed that the involvement of another person in the offenses "does not negate [the appellant's] own guilt." The court stated that "[w]hile [the appellant's] record of criminal convictions was not extensive, it was significant because of the conviction for rape of a child and the other minor [driving] offenses," thus justifying the imposition of the maximum sentence of twelve years for each of the especially aggravated sexual exploitation of a minor convictions and two years for each of the sexual exploitation of a minor convictions. The court considered as

mitigation that the victims did not suffer serious bodily injury. The court also found that the appellant did not exhibit any remorse for his crimes.

The trial court noted that several of the appellant's convictions were based upon photographs which were taken, at most, minutes apart; therefore, the court found that the sentences for the convictions based upon activity closely related in time should be served concurrently with each other. Regardless, the court found that some consecutive sentencing was warranted because the appellant "was convicted of two or more offenses involving the sexual abuse of minors." The court noted that "one of those minors was actually living with him. Another was her sister. Another, a friend." The court stated that the relationship between the appellant and the victims lasted over an extended period of time, approximately one year. The court found that the appellant engaged in "an extensive, pervasive, continuous course of conduct engaging in extensive pervasive sexual activity with these children." The court also noted that the victims had suffered "mental anguish." Accordingly, the court ordered that the sentences for counts one through seven be served concurrently with each other, counts eight and nine should be served concurrently with each other but consecutively to counts one through seven, counts eleven through twenty should be served concurrently with each other but consecutively to counts eight and nine, and counts twenty-one through twenty-three should be served concurrently with each other but consecutively to counts eleven through twenty, for a total effective sentence of thirty-eight years. Finally, the court ordered that the instant sentences be served consecutively to the appellant's previously imposed twenty-five-year sentence for rape of a child. The court found "that this extended confinement is necessary to protect society and the community and that the aggregate of these sentences totally sixty-three years reasonably relates to the severity and the tremendous magnitude of the offenses . . . which this defendant has committed."

On appeal, the appellant contends that "the State violated the 'holding back' statute in bringing the [instant] charges," that the trial court erred in denying his motion to suppress, that the evidence is insufficient to sustain his convictions, and that the trial court erred in sentencing.

## II. Analysis

### A. Rule 8 Violation

The appellant argues that the trial court erred by denying his motion to dismiss the indictment, contending that the State "held back" the indictments in the instant case and

thereby violated Rule 8(a) of the Tennessee Rules of Criminal Procedure.[2]

At the hearing on the motion to dismiss the sexual exploitation of a minor indictment, the appellant argued that the photographs, which were the bases for the especially aggravated sexual exploitation of a minor charges, were "part and parcel" of the rape case. The appellant contended that Rule 8 therefore required that all of the offenses be joined in the same indictment. The appellant argued that since the charges were not joined, the indictment on the instant charges must be dismissed. The State contended that the indictment on the instant charges was returned before the appellant's trial for rape of a child and that the charges involved different victims. Further, the State argued that the delay in examining the computer and photographic evidence resulted from the appellant's absconding and faking his suicide. The State asserted that the investigation and prosecution of the instant charges were suspended following the appellant's alleged death; however, the prosecution "resumed in earnest" after the appellant was apprehended in South Carolina.

Detective Cubberly testified at the suppression hearing that he received a complaint from a minor female victim, alleging that she had been involved in a sexual relationship with the appellant and that the appellant was involved with another teenage female who was living with him. The victim told Detective Cubberly that the appellant had taken photographs of her and stored them on a computer. On May 13, 2004, while investigating the allegations, Detective Cubberly obtained a search warrant for the appellant's residence and seized the computer and photographs at issue in the instant case. The items were taken to Knoxville for forensic examination. Before the items were analyzed, the appellant was indicted in January 2005 on three counts of statutory rape and in February 2005 on one count of rape of a child. After making bond on those charges, the appellant absconded and faked his suicide. The computer and other items were not analyzed because the appellant was allegedly dead.

The appellant was indicted on the instant charges in December 2006 after he was apprehended in South Carolina. On July 27, 2007, the appellant was convicted by a jury for rape of a child. The appellant filed a motion to dismiss the indictment on the especially aggravated sexual exploitation of a minor charges on July 27, 2007. The trial court denied the motion, and trial commenced in April 2009.

Tennessee Rule of Criminal Procedure 8(a)(1) provides that

> [t]wo or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a

---

[2] The record does not contain a transcript of the hearing on this issue because the tape was lost by the court reporter; however, the record does contain a statement of the evidence.

separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:

> (A) based on the same conduct or arise from the same criminal episode;
>
> (B) within the jurisdiction of a single court; and
>
> (C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

The Advisory Commission Comments to the rule explain that "[t]his rule is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy." The comments caution that

> section (a) is meant to stop the practice by some prosecuting attorneys of "saving back" one or more charges arising from the same conduct or from the same criminal episode. Such other charges are barred from future prosecution if known to the appropriate prosecuting official at the time that the other prosecution is commenced, but deliberately not presented to a grand jury. "Appropriate prosecuting official" shall be so construed as to achieve the purpose of this rule, which is the prevention of a deliberate and willful "saving back" of known charges for future prosecution.

Tenn. R. Crim. P. 8, Advisory Comm'n Cmts. This court has explained that "[t]he policy behind Rule 8(a) is to avoid piecemeal litigation and to disallow the 'saving back' of charges arising from the same conduct or same criminal episode." State v. Baird, 88 S.W.3d 617, 621 (Tenn. Crim. App. 2001). A trial court's findings of fact in a Rule 8 "hearing are binding upon this court unless the evidence contained in the record preponderates against them"; however, this court reviews the trial court's conclusions of law de novo. Id. at 620.

Initially, we note that the timeline in this case reflects that the presentments charging the appellant in the rape of a child case and the sexual exploitation of a minor cases were all issued before trial on any charges. Additionally, there were charges of statutory rape to which the appellant plead guilty. The fact that there were separate charging instruments is not in itself problematic because Rule 8 "does not necessarily prohibit a subsequent

indictment, provided it is consolidated with the prior indictment before trial or disposition." Baird, 88 S.W.3d at 622. Regardless, consolidation is not required unless "(1) the offenses arise from the same conduct or criminal episode; (2) the conduct is known to the appropriate prosecuting official at the time of the return of the indictment; and (3) the offenses fall within the jurisdiction of a single court." Id. at 620.

This court has previously explained that "[t]he term 'same conduct' refers to 'a single action which may be divisible into distinct offenses.'" Id. (quoting State v. Dunning, 762 S.W.2d 142, 143-44 (Tenn. Crim. App. 1988)). Further, this court has explained that the term

> criminal episode relates to several distinct offenses which arise out of separate actions or conduct but which occur in a closely connected series of events in place and time. . . . A critical characteristic of single episode offenses, particularly in cases involving otherwise unrelated offenses or offenders, is the fact that proof of one offense necessarily involves proof of the others.

Id. at 620-21 (internal quotations and citation omitted).

We note that the indictments or presentments for the rape of a child and statutory rape charges are not included in the record on appeal. Ordinarily, "[i]n the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also Tenn. R. App. P. 24(b) (providing that the appellant bears the "burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal").

However, this court's opinion in the rape of a child case reflects that the victim was T.C. See State v. Kevin Allen Gentry, No. E2008-02226-CCA-R3-CD, 2010 WL 376597, at *1 (Tenn. Crim. App. at Knoxville, Feb. 3, 2010), perm. to appeal denied, (Tenn. 2010). In the instant case, the victims were A.H., L.H., and B.H. The victims of the offenses were not the same nor were the offenses. The appellant argues that "[t]he charges of sexual exploitation of a child are part and parcel with the statutory rape charges and in fact the photographs are compelling evidence supporting these cases. They involve the same defendant, the same victims, and are from the same time period." The court found that the two cases did not involve the same conduct nor did they relate to the same criminal episode. Further, there is nothing in the record that indicates that evidence regarding one set of crimes would be admissible in a trial regarding the other crimes. Moreover, the trial court found that

the appellant's absconding and faking his death "was obviously outside the State's control" and that any delay in indicting the appellant on the instant charges was attributable to the appellant's actions and not to "any lack of due dilligence [sic] on the part of the State." The court stated that it could "find no abuse by the State in bringing these charges in the fashion and time that they did." We agree with the trial court and conclude that the especially aggravated sexual exploitation of a minor and the rape charges did not arise from the same conduct or the same criminal episode for the purposes of Rule 8(a). Thus, we conclude that the trial court did not err in denying the motion to dismiss the indictment.

## B.  Motion to Suppress

Prior to trial, the appellant filed a motion to suppress evidence taken from his home, arguing that the affidavit underlying the search warrant failed to show the informants' basis of knowledge or their reliability. The State disagreed, arguing that while Tennessee law requires both a basis of knowledge and reliability, these components do not have to be expressly demonstrated when information is derived from citizen informants, such as those in the instant case. The State noted that two of the informants were the victims and that their statements corroborated each other. The State further noted that two other informants gave statements which corroborated each other as well as the statements given by the victims. Therefore, the affidavit sufficiently established the informant's basis of knowledge and veracity.

The challenged affidavit, which was prepared and signed by Detective Cubberly on May 13, 2004, stated the following:

> On May 4, 2004 at 2PM [victim #1's father], a citizen of Knox County, TN., brought his daughter (victim # 1) who is 15 years old to report that she had been involved in a sexual relationship with Kevin Allen Gentry a 32-year-old male. Victim #1 stated that she had been going to Kevin Allen Gentry['s residence] at 810 Layman Dr. Dandridge, TN, in Sevier County from May 24, 2003 to November 29, 2003. The victim said that Kevin Allen Gentry is living with and having sexual intercourse with a female who is 14 years old. Victim #1 also stated that on one occasion Kevin Gentry was having sexual intercourse with her and other juvenile while a female named Vicki took photographs of them having sex. Victim #1 has seen the photographs depicting Victim # 1 and the 14-year-old female juvenile (names disclosed to Judge/Magistrate) on Kevin Gentry's [c]omputer in his home. Victim #1 said that she has

-10-

had sexual intercourse with Kevin Gentry approximately 15 times. Victim #1 also said that she has seen approximately 15 females, some depicted as juveniles, in a pornographic nature on his computer that he downloaded from the internet or he put them on himself.

On May 6, 2004 I interviewed victim # 2 a 14 year old female who stated that she has had sexual intercourse with Kevin Gentry (age 32) on several occasions[.] She also said that she, victim #1, another juvenile and Kevin Gentry had sexual intercourse at the same time. Both victims stated that Kevin Gentry knew that they were under age. Victim # 2 stated that this happened from August 2003 to March 2004 at said residence.

On May 11, 2004 I took a statement from an independent witness (witness 1) a 14 year old female who said she is friends with the 14 year old girlfriend, Victim # 1, Victim # 2, and Kevin Gentry, all of whom have told her independently that they had been involved in sexual intercourse[,] with one another.

On May 11, 2004 I took a statement from witness # 2, the Mother of witness # 1, who stated that she was told by the 14 year old girlfriend who lives with Kevin Gentry that they were involved in a sexual relationship together. Witness # 2 stated that Kevin Gentry possibly has [a] homemade pornographic movie of him and his 14-year-old girlfriend. Witness # 2 said that Kevin Gentry had asked another friend to transfer VHS [t]apes to DVD's, said tapes were of him and a[n] ex-girlfriend having sexual intercourse. But when Kevin Gentry came with more tapes the friend assumed that it was of Kevin Gentry and his new girlfriend who was only 13 at the time, to which Kevin Gentry did not state that the tapes show something different.

The trial court found that Detective Cubberly personally knew the informants. The court said, "It's clear that these are fourteen-, fifteen-year-old children, girls. They are not in the category of criminal informants." The court stated that the independent statements of each informant "corroborates the others" and clearly established probable cause.

In a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and

value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Moreover, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

Our supreme court has explained that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

Id. at 294 (footnote and citations omitted). In this state, "a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. To establish probable cause, the affidavit must set forth facts from which the issuing magistrate may reasonably conclude that the evidence sought will be found in the place to be searched. State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000). Furthermore, "'affidavits must be looked at and read in a common sense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

Our supreme court has explained that "[a]n affidavit may include hearsay information supplied by a confidential informant as a basis to establish probable cause[, but if] the hearsay information is supplied by a criminal informant or a person from a 'criminal milieu,' we apply a two-prong test in determining the reliability of the information." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006) (citing State v. Williams, 193 S.W.3d 502, 507 (Tenn. 2006)). Generally, when probable cause is established from a tip from an

anonymous or criminal informant, the court must apply the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), namely that the information must indicate the veracity of the informant and the informant's basis of knowledge, to determine whether the tip established probable cause. Smotherman, 201 S.W.3d at 662; see also Spinelli v. United States, 393 U.S. 410 (1969), Aguilar v. Texas, 378 U.S. 108 (1964). However, Tennessee law draws a distinction between a "citizen informant" and an informant from "the criminal milieu." State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). While information from a criminal informant must be judged by the Aguilar-Spinelli test, known citizen informants typically enjoy a presumption of reliability. See id. at 356-57; see also State v. Luke, 995 S.W.2d 630, 637 (Tenn. Crim. App. 1998). The fact that the victims and witnesses were not specifically named in the affidavit does not render the affidavit unreliable; "[t]he name of a citizen informant is not required to be disclosed in the affidavit." State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993).

The trial court found that the information contained in the affidavit came from citizen informants; therefore, the information was presumed to be reliable. We agree with the trial court. Detective Cubberly stated that he knew the victim informants. One of the minor victims explicitly stated that photographs had been taken of sexual activity involving herself and the appellant and that the photographs were in the appellant's residence. We conclude that this information alone constituted probable cause. However, as the trial court noted, the victim's statements were corroborated by the other informants. Accordingly, we conclude that the appellant is not entitled to relief on this issue.

## C. Sufficiency of the Evidence

Next, we address the appellant's challenge to the sufficiency of the evidence supporting his convictions. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39-17-1003(a)(1) provides that "[i]t is unlawful for any person to knowingly possess material that includes a minor engaged in . . . [s]exual activity." A minor is defined as "any person who has not reached eighteen (18) years of age." Tenn. Code Ann. § 39-17-1002(3). "Material" is defined, in pertinent part, as a "photograph . . . or other pictorial representation[, or any] image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval." Tenn. Code Ann. § 39-17-1002(2)(A), (C). "Sexual activity" is defined, in part, as "[v]aginal . . . or oral intercourse . . . done with another person [or l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(A), (G). A person commits especially aggravated sexual exploitation of a minor who knowingly promotes, uses, or permits a minor to participate in the performance or in the production of material which includes the minor engaging in sexual activity. Tenn. Code Ann. § 39-17-1005(a)(1).

The appellant argues that the testimony at trial reflected that a number of people had access to the appellant's residence and that someone other than the appellant took the photographs in question. The appellant said that "although admittedly engaged in sexual activity with minors, [he] did not produce the photographs himself . . . [which] clearly places doubt on the appellant's involvement in the production of the photographs." We disagree.

The photographs, which depicted the appellant having sex with minors or the minors displaying their genitals and/or breasts, were found on a disk beside the computer in the appellant's bedroom. Two of the victims testified that they knew the photographs were being taken. A.H. testified that the appellant told the victims to get into various poses for the photographs. In several of the photographs, the appellant is looking at the camera, clearly aware the photographs were being taken. Additionally, the appellant told Detective Cubberly during the execution of the search warrant that the detective would find sexually explicit photographs of himself and the victims on his computer. The jury, acting within its purview, found that the appellant knowingly possessed the photographs found in his home and that he knowingly promoted, used, or directed the minor(s) to participate in the performance or the production of materials showing the minor victims engaging in sexual activity. We conclude that the evidence is sufficient to sustain the appellant's convictions.

D. Sentencing

The appellant challenges both the length of the sentences imposed and the imposition of consecutive sentencing. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing

-14-

and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The offenses were committed between March 2002 and June 2003. For offenses committed prior to June 7, 2005, sentencing was governed by prior law, which provided for "presumptive" sentences. The presumptive sentence was the midpoint in the range for Class A felonies and the minimum in the range for all remaining felonies. See Tenn. Code Ann. § 40-35-210(c), (d) (1997 & 2003). Trial courts were to enhance and/or mitigate a defendant's sentence based upon the application of enhancement and mitigating factors. See Tenn. Code Ann. § 40-35-210(d), (e) (1997 & 2003). The appellant was convicted of especially aggravated sexual exploitation of a minor, a Class B felony, which carried a range of between eight and twelve years for a standard, Range I offender. See Tenn. Code Ann. § 40-35-112(a)(2); 39-17-1005(c) (1997 & 2003). At the time the appellant committed the offenses, sexual exploitation of a minor was a Class E felony which carried a range of between one and two years for a standard, Range I offender. See Tenn. Code Ann. § 40-35-112(a)(5); 39-17-1003(c) (1997 & 2003).[3]

In response to Blakely v. Washington, 542 U.S. 296 (2004), our legislature amended Tennessee's sentencing scheme and eliminated presumptive sentences. However, our code provides that "defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982," cannot be sentenced pursuant to the amended sentencing act without a waiver of the defendant's ex post facto protections. Tenn. Code Ann. § 40-35-210, Compiler's Notes. In the instant case, nothing in the record indicates that the appellant executed a written waiver of his ex post facto protections; therefore, the trial court was required to sentence him under the prior sentencing law. See State v. Jarvis Harris, No. W2006-02234-CCA-R3-CD, 2007 WL 2409676, at *11 (Tenn. Crim. App. at Jackson, Aug. 24, 2007).

---

[3] As of July 1, 2005, sexual exploitation of a minor was designated a Class D felony. Tenn. Code Ann. § 39-17-1003(e), amends. (Supp. 2005).

The trial court, recognizing the Blakely decision, applied enhancement factor (1) based upon the appellant's prior criminal history which consisted of the appellant's rape of a child conviction and minor traffic offenses. See Tenn. Code Ann. § 40-35-114(1). The trial court's application of enhancement factor (1) did not violate the dictates of Blakely. See Tenn. Code Ann. § 40-35-114(1); State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007).

The trial court found that the appellant's "record of criminal convictions was not extensive, [however,] it was significant because of the conviction for rape of a child and the other minor offenses" and justified the imposition of the maximum sentence for each of the instant convictions. The court stated that the single mitigating factor, namely that there was no serious bodily injury to the victims, did not require a downward departure in the sentence. See Tenn. Code Ann. § 40-35-113(1).

Generally, although the trial court should also consider enhancement and mitigating factors, the statutory factors are advisory only. See Tenn. Code Ann. § 40-35-114 (2006); State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. Therefore, we conclude that the trial court was entitled to impose the maximum sentence for the instant convictions based upon the application of enhancement factor (1).

In connection with this issue, the appellant argues that his conviction of rape of a child is part of his prior criminal history because "the State chose to try that case first." The appellant argues that this prior offense and the instant offenses "occurred simultaneously" and that, therefore, the trial court should not have imposed a maximum sentence on the basis of a prior criminal history. We examined, *supra*, the appellant's contention that his cases should have been joined and concluded the complaint was not meritorious. This issue is without merit.

Next, we turn to the appellant's contention that the trial court erred in ordering consecutive sentencing. Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

-16-

As we stated earlier, the trial court found that the appellant's convictions which were based upon photographs taken minutes apart should be served concurrently with each other. However, in determining that consecutive sentencing was appropriate for other convictions, the court found that the appellant was convicted of two or more offenses involving the sexual abuse of minors. The court stated that the offenses occurred over the span of more than one year, during which time the appellant engaged in "an extensive, pervasive, continuous course of . . . sexual activity with these children" and that the victims suffered mental anguish."

Tennessee Code Annotated section 40-35-115(b) provides that consecutive sentencing may be appropriate when

> the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5); see also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). This court has previously held that especially aggravated sexual exploitation of a minor is child sexual abuse for the purposes of Tennessee Code Annotated section 40-35-115(b)(5), and, through dicta, stated that sexual exploitation of a minor would likewise be considered child sexual abuse. State v. John Jason Burda, No. M2006-02523-CCA-R3-CD, 2009 WL 1181349, at **15-16 (Tenn. Crim. App. at Nashville, May 4, 2009), perm. to appeal denied, (Tenn. 2009). Additionally, the appellant's previous rape of a child conviction clearly constitutes child sexual abuse.

The instant offenses involved three minor victims and occurred over an extended period of time. The trial court observed the victims in court and saw their level of "mental anguish." The trial court stated that consecutive sentencing was proper because "extended confinement is necessary to protect society and the community and that the aggregate of these sentences totalling sixty-three years reasonably relates to the severity and the tremendous magnitude of the offenses . . . which this defendant has committed." Given the appellant's "extensive, pervasive, [and] continuous" abuse of the victims, we conclude that the trial court did not err in imposing consecutive sentencing.

### III.  Conclusion

In sum, we conclude that the trial court did not err in denying the motion to dismiss the indictment, in overruling the appellant's motion to suppress, or in sentencing the appellant.  Further, the evidence adduced at trial supports the appellant's convictions. Therefore, the judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE